IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

    vs.                       No. 14-CR-2781 JP

**JOSEPH LAWLER**,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

On June 15, 2015, Defendant filed a MOTION TO RECONSIDER DENIAL OF CONTINUANCE OF THE TRIAL DATE AND DEADLINE TO FILE PRE-TRIAL MOTIONS ("Motion to Reconsider") (Doc. No. 42). On June 17, 2015, the government filed a MEMORANDUM IN OPPOSITION ("Response") (Doc. No. 45). On June 18, 2015, the Court held a hearing on the Motion to Reconsider. The Court will deny the Motion to Reconsider.

**I.**      **Background**

On August 12, 2014, Defendant was charged with twelve counts of wire fraud in violation of 18 U.S.C. § 1343. The charges allege that Defendant convinced investors to roll over their IRA accounts into accounts serviced by his company Projaris Management, LLC ("Projaris"), even though the new accounts were not eligible for tax treatment as IRAs. The government contends that Defendant engaged in additional fraudulent conduct by promising these investors to invest their funds in gold and silver futures, and guaranteed their principal. The government alleges that rather than investing the monies, Defendant used them for personal gain.

This Court has previously granted three unopposed motions by the Defendant to continue trial dates. On October 20, 2014, Defendant filed a 1st Motion to Continue (Doc. No. 15). The 1st

Motion to Continue asked the Court to move the December 1, 2014 trial setting to March, 2015 and the pretrial motions deadline to January 26, 2015. On November 7, 2014, the Court granted the 1st Motion to Continue in part, moving the trial to February 2, 2015 and the motions deadline to January 9, 2015. *See* Doc. No. 16.

On January 13, 2015, Defendant filed a 2nd Motion to Continue (Doc. No. 19). The 2nd Motion to Continue asked the Court to postpone trial by sixty days. On January 21, 2015, the Court granted the motion and moved the trial ahead more than sixty days, to April 6, 2015. The Court also moved the pretrial motions deadline ahead by roughly 90 days, to March 6, 2015. *See* Doc. No. 20.

On March 6, 2015, Defendant filed a 3rd Motion to Continue (Doc. No. 22). Defendant again asked for another sixty-day continuance of the trial and motion deadline. On March 23, 2015, the Court granted the motion, once again moving the trial forward by more than sixty days at Defendant's request, from April 6, 2015 to June 8, 2015. The Court also moved the pretrial motions deadline to May 8, 2015. *See* Doc. No. 24.

On March 23, 2015, the government filed its own motion to vacate the trial date (Doc. No. 25). (The government contends that this motion does not count as a motion to continue because the government was prepared to proceed to trial in April, but was unavailable for the June calendar setting. In other words, the government says it was merely asking for a continuance two settings ahead in order to accommodate the prosecutor's travel plans and the Defendant's need to prepare for trial after it had became clear Defendant would not enter into a plea agreement with the government). On April 1, 2015, the Court granted the government's motion and rescheduled trial for July 6, 2015.

On May 25, 2015, Defendant filed an OPPOSED MOTION TO CONTINUE TRIAL

AND EXTEND MOTION DEADLINE ("4th Motion to Continue") (Doc. No. 32). In that

motion, Defendant said the government had produced documents on and after April 1, 2015 that

would be impossible to review before the trial. These documents include

> spread sheets [sic] prepared by the FBI, victims bank records,
> newly discovered video of [Defendant's] statements (in addition to
> audio and transcript previously provided, trial exhibits (with a
> caveat that additional documents will be added, including
> defendants' [sic] business quarterly reports to investors, a new FBI
> 302 of an investor, bank transactions upon which FBI relies to
> prepare spreadsheets (more spreadsheets may be prepared for
> trial), a grand jury transcript of agents' testimony for superseding
> indictment, (4/15/15). On May 1, 2015, counsel for [Defendant]
> received notice of the agents' grand jury testimony, an additional
> 75 pages of account statements, form letters, etc., from Mr. Lawler
> to the SEC, and a ton of documents from Joe's other company
> Victory partners and other miscellaneous documents….

4th Motion to Continue at 2.

The government's RESPONSE TO MOTION ("Response") (Doc. No. 33) argued that

the alleged victims, who had arranged their schedules to be available for a trial beginning July 6,

2015, were "elderly and/or infirm" and that "[t]raveling is a great inconvenience for them. Some

are undergoing medical treatment such as chemotherapy." Doc. No. 33 at 3.

On June 1, 2015, the Court held a hearing on the 4th Motion to Continue. At the hearing,

Defendant noted that the government had also recently produced the information the

government's expert witness relied on to form her opinions. Counsel for Defendant noted that

the Defendant was considering obtaining a forensic accountant to testify as an expert on

Defendant's behalf.

The government explained that one of the government's witnesses owned a dental

practice in Wisconsin and had rescheduled patient appointments during the week of July 6, 2015

in order to travel to New Mexico and testify. The government also referenced unspecified difficulties in obtaining the cooperation of other witnesses who would not necessarily be inconvenienced by a continuance of the trial date.

On June 1, 2015, immediately following the hearing on Defendant's 4th Motion to Continue, the Court entered an ORDER DENYING MOTION TO CONTINUE (Doc. No. 38). In its order, the Court noted that the documents the government had recently produced to Mr. Lawler were all either documents that Mr. Lawler himself had created, or which the SEC had already produced to Mr. Lawler in a civil proceeding in 2014. Defendant represented that he had lost those documents during the summer of 2014. The Court concluded, however, that Defendant's familiarity with the documents would allow the Defendant to expedite the preparation of his defense.

On June 15, 2015 (i.e., two weeks after the Court denied Defendant's 4th Motion to Continue), Defendant filed the Motion to Reconsider. In the Motion to Reconsider, Defendant contends that this court erroneously denied the 4th Motion to Continue because "whatever inconvenience that is caused [by a two-month continuance] does not outweigh the significant harm that [Defendant] would suffer were he forced to proceed to trial without the adequate representation of counsel." Motion to Reconsider at 7. The Motion to Reconsider argues that continuance is justified because (1) Defendant's expert witness is unavailable to testify at trial during the week of July 6; (2) Defendant has not received bank records for the Vectra bank account ending in 1751 from November 2011 to March 2012 from the government; and (3) the government produced 10,000 files to Mr. Lawler on May 29, 2015, and it is "unreasonable to expect Mr. Lawler's attorney to review those files, cull them for relevant information, while at

the same time prepare for trial, retain an expert, prepare pre-trial motions, and litigate their other assigned cases." Motion to Reconsider at 7–8.

The government argues that the Motion to Reconsider "rehashes the same arguments [Defendant] made in the Opposed Fourth Motion to Continue], [to wit:] that the government has produced many documents and the defense cannot be expected to be ready for trial by July 6, 2015." Response at 3. The government notes, however, that Defendant has "up[ped] the ante…by now citing to the Sixth Amendment, and arguing that he will be denied effective assistance of counsel if the Court maintains the July 6 trial setting." *Id.* The government conceded that Defendant's argument that his expert was unavailable for the July 6 setting was not raised in the 4th Motion to Continue. *Id.* The government also stated it had not produced records for the Vectra account ending in 1751 for November 2011 through March 2012 because the account was not created until April, 2012. *Id.* at 4–5.

On June 18, 2015, the Court held a hearing on Defendant's Motion to Reconsider and heard further argument from Defendant and the government. First, as to the unavailability of Defendant's expert witness, the Court asked when counsel for Defendant had first contacted the expert about testifying. Counsel for Defendant responded that the first time she had contacted the expert witness was on June 2, i.e. the day after the Court denied the Defendant's 4th Motion to Continue.

As to the government's production, on May 29, 2015, of over 10,000 files, the government explained that the files had already been in defendant's possession in connection with an SEC investigation of Victory Partners, a company Defendant had operated before he started Projaris, which is the organization that is the subject of the criminal charges. In any event, the government argued that the Victory Partners files were of dubious relevance, because the

indictment arises from Defendant's management of Projaris, not Victory Partners. Defendant responded that based on an initial review, the documents contained evidence that would be valuable for impeaching the government's witnesses, who apparently had contacts with the Defendant through both Victory Partners and later through Projaris. Additionally, Defendant contended that there was information in the cache that would be admissible under Fed. R. Evid. 406 to establishing that Defendant had a habit or practice of reimbursing investments made in his companies on a regular basis.

## II.   Legal Standards

### A.   Motions to reconsider

"Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* However, "[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Christy*, 739 F.3d at 539 (quotation and citation omitted).

### B.   Motions to continue

Under 18 U.S.C. § 3161(h)(7)(A), a period of time may be excluded from the Speedy Trial Act's computation of the time that a Defendant must be brought to trial when the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." In order to grant such a continuance, the Court must

explain (either orally or in a written order) how it reached its conclusion that the ends of justice served by granting the continuance outweigh the public and the defendant's interest in a speedy trial. *Id.*

The Tenth Circuit has explained 18 U.S.C. § 3161(h)(7)(A)'s written or oral findings requirement as follows: "A record consisting of only short, conclusory statements lacking in detail is insufficient" to justify granting an ends-of-justice continuance. *United States v. Toombs*, 574 F.3d 1262, 1271 (10th Cir. 2009). "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." *Id.* at 1271–1272 (citation omitted).

**III.    Discussion**

A.    <u>Unavailability of Defendants' expert</u>

Defendant's first argument in favor of reconsideration is that his chosen expert witness, Janet McCard, cannot testify at the trial on July 6 because of other professional commitments.[1] The problem with this argument is that Defendant did not raise it in his 4th Motion to Continue. Accordingly, presented as a motion to reconsider, the Court finds grounds to reject defendants' argument because it "could have been raised earlier." *Christy*, 739 F.3d at 539 (quotation and citation omitted). True, the government provided Defendant with notice that the government intended to offer expert testimony on May 27, 2015, and provided a new set of discovery consisting of the documents the government's expert had relied upon in forming opinions. Even assuming that new information was produced in that discovery, Defendant could have investigated McCard's availability and raised the issue at the June 1, 2015 hearing on Defendant's 4th Motion to Continue.

---

[1] Counsel for Defendant stated at the June 18, 2015 hearing that Ms. McCard had not been subpoenaed to testify.

In any case, the Court is not convinced that the ends of justice require a continuance at this late date. Defendant was indicted in August, 2014, arrested on September 11, 2014, and released from custody the next day, September 12, 2014. He has had ample time to prepare for trial. Defendant's counsel's belief that this case would be resolved without the need for a trial and that longer delays are sometimes tolerated in simple drug or weapons possession cases is simply irrelevant to the question of whether Defendant's need to delay trial outweighs the public's interest in a speedy trial. The Court finds that on this record, Defendant's expert is unavailable not because this Court has been unaccommodating, but because Defendant did not seek to retain an expert witness until after the Court denied his 4th Motion to Continue. In other words, Defendant cannot bootstrap his failure to try to obtain the testimony of an expert witness until a little more than one month before trial into a reason to continue the trial.

B.    The government's allegedly tardy production of files and failure to produce documents Defendant had requested for the Vectra 1751 account.

Defendant's second and third arguments are interrelated. Defendant claims that the government continues to withhold records predating April, 2012 relating to the Vectra account ending in 1751. Defendant further contends that the government produced "over 10,000" documents on May 29, 2015, and it would be infeasible for Defendant and his counsel to review those documents and prepare a defense prior to trial. The Court is not persuaded by either argument for three reasons.

First, as to bank records for the 1751 account that have yet to be produced, the government presented the Court with evidence that the Vectra account ending in 1751 was opened in April, 2012. It seems reasonable to conclude from this information that no bank records prior to April, 2012 exist for that account. *See also* REDACTED INDICTMENT (Doc.

8

No. 40) at 2 ("On or about April 3, 2012, the defendant caused T.L. to open bank account #xxxxxx1751 for Projaris at the Vectra Bank located in Farmington, New Mexico.").

Second, the Court has already concluded that "the documents disclosed by the government on May 29, 2015 were the Defendant's own documents, with which he should be familiar." Defendant fails to show why this finding was clearly erroneous so as to justify reconsideration of the Court's earlier order denying Defendant's 4th Motion to Continue. To be sure, Defendant's counsel represented at the hearing on June 18, 2015 that the documents produced on May 29, 2015 contained correspondence sent by some of the alleged victims to the SEC, and that these documents could be valuable impeachment evidence. But as the government pointed out at the hearing, the documents were produced to Defendant electronically. Therefore, the files can be subjected to optical character recognition and then searched. Defendant has no need to examine each page; he and his counsel can perform searches for names, words, or other terms and narrow the set of potentially useful documents accordingly. It is worth repeating that the documents were either created by Defendant himself or were already produced to Defendant during the 2014 SEC civil action.

Third, the Court is not persuaded that Defendant's unpreparedness for trial stems from the government's May 29, 2015 production of documents. At the hearing on the Motion to Continue, Defendant's counsel stated that Defendant had not reviewed the documents produced by the government in discovery. The Court is convinced that Defendant's problem stems not from any action or omission by the government but his own failure to diligently participate in the preparation of his own defense. This is not because Defendant lacks ability or industry: Defendant has worked as a mortgage broker, travel agent, and an insurance salesman. Defendant

is best situated to understand the structure of the companies he operated, the business practices at issue, and his relationships with the alleged victims in this case.

Moreover, most of the discovery produced by the government consists of documents Defendant created himself and which were held by third parties. In other words, Defendant should have at least some familiarity with the companies, accounts, and documents at issue in this case. Defendant could have sought out documents no longer in his possession from third parties, such as the Vectra bank records of his own companies, instead of waiting for the government to produce them.

The Court's earlier conclusion that Defendant had possession of and was already familiar with the documents the government produced on May 29, 2015 was not clearly erroneous. Defendant's argument that the government has Vectra 1751 documents in its possession predating the creation of the account borders frivolity. Finally, Defendant is well-placed to assist in the preparation of his defense. Although the number 10,000 sounds daunting in the abstract, Defendant's counsel has failed to convince the court that she and her co-counsel (both able attorneys) cannot review the documents produced, with the Defendant's assistance, before trial.

C.     The government's arguments against continuance

After the hearing on the Motion to Reconsider, the Court asked the government to submit additional information about the prejudice it would suffer if the Court were to grant Defendant's request for a continuance. The government explained that it had expended a not inconsiderable amount of time and effort to secure the testimony of Norma Lundberg and Thomas Dowling at the trial set for July 6, 2014. The Court will briefly summarize the hardships another delay in the trial would visit on Ms. Lundberg and Mr. Dowling in order to explain why it finds that the public's interest in a speedy trial outweighs Defendant's need for a continuance.

Ms. Lundberg is currently undergoing chemotherapy treatment. The government has explained that Ms. Lundberg's medical appointments are set months in advance. The government asserts that Ms. Lundberg's chemotherapy sessions are very debilitating, such that she is unavailable to travel or to testify for up to a week after the sessions. The government represents that Ms. Lundberg was originally scheduled for a chemotherapy session on July 7, 2015. When the trial was calendared for July 6, 2015, Ms. Lundberg advised the government that her medical needs interfered with her availability to testify. The government says that it worked with Ms. Lundberg and her physician to reschedule her chemotherapy for July 17, 2015, so that she will be available to testify during the week of July 6. The government further contends that it has no way of knowing whether a new trial setting would once again conflict with Ms. Lundberg's medical treatments, or whether her doctors would once again agree to alter her treatment schedule in order to make her available to testify.

Mr. Dowling is an elderly dentist, a sole practitioner with an office staff. Dr. Dowling has advised his patients and his staff that his office will be closed for the week of July 6 because of his need to testify at the trial of this case. He is losing client fees for the week he will be closed, and he is paying his staff for the week. The government argues that Mr. Dowling's attendance at the trial of this case is accordingly at a significant economic cost. If the trial is rescheduled Mr. Dowling may not be able to refill the week of July 6, 2015 with patients and would consequently sustain financial losses for that week as well as a future week when he would have to cancel patient appointments in order to testify at a rescheduled trial.

The Court is persuaded that the prejudice the government would suffer as a result of yet another continuance prejudices the public's interest in a speedy trial to the same degree.

Accordingly, the Court finds the government's reasons for opposing Defendants' requests to delay the trial are themselves sufficient to justify denying Defendant's Motion to Reconsider.

**IV.     Conclusion**

IT IS ORDERED THAT Defendant's Motion to Reconsider is DENIED.

_____

SENIOR UNITED STATES DISTRICT JUDGE